IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVA RIVERA,<br><br>    Plaintiff,<br><br>    v.<br><br>CVS PHARMACY,<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 23-4799-KSM |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                                November 5, 2024

  Accidents happen.  Although some may lead to serious injuries, they do not always lead to liability.  Plaintiff Ava Rivera ("Rivera") got seriously injured while shopping at Defendant CVS Pharmacy ("CVS").  When Rivera grabbed a spray bottle of disinfectant from a cardboard box, the spray mechanism detached, the bottle fell to the ground, and liquid chemicals splashed into her eyes.  A year later, she sued CVS for negligence under a slip-and-fall theory of premises liability.  CVS now moves for summary judgment on Rivera's claim.  (Doc. No. 20.)  Because the undisputed evidence shows that CVS did not have actual or constructive notice that the spray bottle was unscrewed or loosened, the Court grants CVS's motion for summary judgment.

  **I.**  **Background**

  On September 16, 2022, Rivera was working for Uber Eats.  (Doc. No. 20-4 at 5.)  At around 11:30 p.m., she entered a CVS store in Ardmore, Pennsylvania to fill a customer's order. (*Id.* at 8–9.).  She quickly found the items that the customer had requested and paid for them. (*Id.* at 9.)  On her way out of the store, she stopped at a clearance table that had discounted items for sale.  (*Id.*)  There were smaller items spread out on the table and larger items in cardboard

boxes below.[1]  (*Id.*; Doc. No. 21-4 at 35–37.)  In one of the boxes, Rivera spotted a spray bottle that she thought was bathroom cleaner.  (Doc. No. 20-4 at 5.)  The spray bottle was in fact Vital Oxide, a powerful disinfectant.  (Doc. No. 21-4 at 23.)  The Vital Oxide bottle had two parts: (1) the base that contained the liquid contents and (2) the trigger mechanism from which the chemicals would spray.  (Doc. No. 20-4 at 13; Doc. No. 21-3 at 2.)

Rivera reached into the cardboard box and picked up the bottle.  (Doc. No. 20-4 at 9, 14; Doc. No. 25 at 4.)  As she lifted the spray bottle out of the box, the trigger mechanism detached from the base.  (Doc. No. 20-4 at 9.)  The bottle then fell to the floor, and its liquid contents splashed into Rivera's face.  (*Id.*)  Immediately, her eyes began to burn, and she started screaming, crying, and calling out for help.  (*Id.*)  CVS staff eventually came to her aid.  (*Id.*)  The employees took her outside and tried to flush out the chemicals by running water over her eyes.  (*Id.*)  After this makeshift first aid, Rivera drove to the customer's house to deliver his Uber Eats order.  (*Id.* at 10.)  Because her eyes still hurt, however, she drove back to the CVS store.  (*Id.*)  There, a police officer came to her aid, called an ambulance, and she was taken to a nearby hospital.  (*Id.*)  As a result of this accident, Rivera said that her vision is worse, her eyes are constantly dry, and she now needs medication for her eyes.  (*Id.* at 18, 21.)

On November 10, 2023, Rivera sued CVS in the Philadelphia Court of Common Pleas.  (Doc. No. 1-4 at 2.)  In her complaint, she brought only one claim against CVS for negligence under a slip-and-fall theory of premises liability.  (*Id.* at 3–7.)  Less than a month later, CVS removed the case to this Court on diversity grounds.  (Doc. No. 1.)  After the close of discovery, CVS moved for summary judgment on Rivera's negligence claim.  (Doc. No. 20.)  Rivera filed

---

[1] The cardboard boxes below the clearance table were the original shipping boxes for larger items, such as, windshield wiper fluids and snow salt.  (Doc. No. 21-4 at 42.)  CVS employees would cut off "the top flaps" and cut away "a wide U" from the front of the box before moving it to the store floor.  (*Id.* at 35, 42.)

her response a few weeks later. (Doc. No. 21.) CVS's motion is now ripe for the Court's review.

## II. Discussion

CVS argues that the Court should grant summary judgment against Rivera because she has no evidence that CVS had actual or constructive notice that the spray bottle was loosened or unscrewed. (Doc. No. 20 at 10–14.) Indeed, CVS says that Rivera has failed to produce any evidence about how, when, or under what circumstances the bottle had become loose or unscrewed. (*Id.* at 16–17.) Rivera counters that CVS violated its duty of reasonable monitoring and should have discovered and corrected this hazard before her accident. (Doc. No. 21-2 at 2–3, 10–11.) The Court will first give the legal standard used to evaluate CVS's motion for summary judgment. We will then turn to the elements of Rivera's negligence claim. Last, the Court will evaluate CVS's argument and Rivera's counterargument.

### A. Legal Standard

Summary judgment is appropriate when the "materials in the record," show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. And at "summary judgment the

3

inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and alterations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted); *see also id.* at 325 ("[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."). After the moving party has met its burden, the nonmoving party is required to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 323 (quotation marks omitted); *see also Matsushita Elec. Indus. Co..*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23 (quotation marks omitted). "[T]his standard makes clear that, even though the right to a jury trial is implicated, a nonmoving party must adduce more than a mere

4

scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (internal citations omitted). "[U]nsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010).

### B. Analysis

In her one-count complaint, Rivera asserts a negligence claim against CVS based on a slip-and-fall theory of premises liability. (Doc. No. 20-2 at 5.) Under Pennsylvania law, "[t]o establish a cause of action in negligence, the plaintiff must demonstrate that [1] the defendant owed a duty of care to the plaintiff, [2] the defendant breached that duty, [3] the breach resulted in injury to the plaintiff, and [4] the plaintiff suffered an actual loss or damage."[2] *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). Both parties agree that Rivera was a customer (what tort law calls an invitee) of CVS. (Doc. No. 20 at 9–10; Doc. No. 21-2 at 2–3.) So, as a landowner, CVS is liable for Rivera's injuries if, but only if, it:

> (A) knows or by the exercise of reasonable care would discover the [dangerous] condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (B) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (C) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts, § 343 (1965); *see also Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 595–96 (Pa. Super. Ct. 1980).

---

[2] Because this is a diversity action premised on Pennsylvania tort law, the Court must apply Pennsylvania law. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220 (3d Cir. 2008) ("Sitting in diversity, we must apply Pennsylvania's law, as it governs the cause of action here.").

The Second Restatement mirrors the long-standing principle in Pennsylvania law that a business, like CVS, is "not an insurer of the safety of business visitors." *Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610 (Pa. 1965).  Rather, CVS owes its customers, like Rivera, "only the duty of reasonable care under the circumstances, specifically, to correct unsafe conditions discoverable through the exercise of reasonable care and diligence." *Id.*  "To establish that [CVS] had notice of the hazardous condition sufficient to trigger the duty of care, [Rivera] must prove either that [CVS] had a hand in creating the harmful condition or had actual or constructive knowledge of the condition." *Lerro v. Wal-Mart Stores, Inc.*, No. CV 08-0993, 2009 WL 10684916, at *2 (E.D. Pa. July 14, 2009) (internal quotations omitted).

*CVS did not create the harmful condition*.  To begin, Rivera does not argue or point to any evidence that CVS staff were responsible for unscrewing or loosening the spray bottle of Vital Oxide.  Indeed, she said in her deposition that she does not know whether the last person who picked up the bottle was a CVS worker or a customer.  (Doc. No. 20-4 at 12.)  Thus, she has no proof that CVS or its employees "had a hand" in loosening or unscrewing the bottle of Vital Oxide.  *Lerro*, 2009 WL 10684916, at *2.

*CVS had no actual notice that the bottle was loosened or unscrewed*.  CVS next argues that it did not have actual notice of the dangerous condition—that the Vital Oxide bottle was unscrewed or loosened.  (Doc. No. 20 at 10–11.)  The record is devoid of evidence that any CVS employee knew that the bottle was loose or unscrewed.  Nor can Rivera identify any customer who alerted CVS staff about this hazard.  (Doc. No. 20-4 at 14.)

Although there is no evidence that CVS employees knew that the bottle was unscrewed or loosened, "where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition." *Porro v. Century III*

6

*Assocs.*, 846 A.2d 1282, 1286 (Pa. Super. Ct. 2004). But even this potential inference of actual notice does not help Rivera. There is no evidence in the record of any prior incidents at CVS when an individual was injured because the top of a spray bottle was loosened or unscrewed, causing liquid to splash into the face of a customer. (Doc. No. 20-4 at 13–14; Doc. No. 21-4 at 90.) Thus, there is no genuine dispute of material fact as to whether CVS had actual notice of the bottle's dangerous condition because there is no evidence that its employees knew that the bottle was loose or unscrewed or that this was a recurring issue.[3]

    *CVS lacked constructive notice of the hazard*. Because CVS did not have actual notice that the bottle was loose or unscrewed, Rivera's negligence claim hinges on whether CVS had constructive notice of the spray bottle's dangerous condition. Constructive notice occurs when "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Moultrey*, 422 A.2d at 596. "What will amount to constructive notice of a dangerous condition depends on the circumstances of each case." *Hagan v. Caldor Dep't Stores, Inc.*, No. CIV. A. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991). "Among the factors affecting the question" of constructive notice "are the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, [and] its probable cause." *Stais v. Sears, Roebuck & Co.*, 102 A.2d 204, 206 (Pa. Super. Ct. 1954).

---

[3] In her brief in opposition to CVS's motion for summary judgment, Rivera does not contest that CVS had actual notice that the bottle was loosened or unscrewed. (*See* Doc. No. 21-2.) Nor does she point to any evidence in the record that would create a genuine dispute of material fact on this issue. (*Id.*) Thus, in the alternative, the Court finds that Rivera has forfeited this issue. *See McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 193 (E.D. Pa. 2022) ("The Third Circuit and other appellate courts agree that when a plaintiff fails to raise an argument in opposition to a motion for summary judgment, it is waived, and she cannot later argue the issue on appeal[.]"); *see also Ankele v. Hambrick,* 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (finding that because plaintiff "ma[de] no response" to defendant's argument, plaintiff had "waived his opportunity to contest" it).

"[O]ne of the most important [constructive notice] factors . . . is the time elapsing between the origin of the defect or hazardous condition and the accident." *Neve v. Insalaco's,* 771 A.2d 786, 791 (Pa. Super. Ct. 2001) (internal quotations omitted). This factor is critical because "if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp. 2d 547, 550 (E.D. Pa. 2008) (quoting Restatement (Second) of Torts § 343 (1965)). Often, a plaintiff's failure to put on evidence related to this factor is fatal to his or her negligence claim. *See Henderson v. J.C. Penney, Corp.*, No. CIV A 08-177, 2009 WL 426180, at *4 (E.D. Pa. Feb. 20, 2009) (collecting cases). While the jury usually weighs the constructive notice factors, the Court must make the determination when the evidence would require the jury to resort to "conjecture, guess or suspicion." *Lanni v. Pa. R.R. Co.,* 88 A.2d 887, 889 (Pa. 1952)).

Here, even taking the facts in the light most favorable to Rivera, she cannot point to any evidence in the record about how or when the Vital Oxide bottle was loosened or unscrewed. (Doc. No. 25 at 6–7.) And without evidence of "one of the most important factors" for constructive notice, *Neve*, 771 A.2d at 791, the jury would be required to resort to "conjecture, guess, or suspicion" about how or when the bottle was unscrewed or loosened, *Lani*, 88 A.2d at 889. Indeed, "it would only be a guess whether" the spray bottle was loosened or unscrewed for "10 minutes, 10 hours or 10 days prior to [Rivera's] accident." *Hess v. Sun Ray Drug Co.*, 127 A.2d 699, 701 (Pa. 1956). That alone is enough for the Court to grant CVS's motion for summary judgment.[4] *See Breen v. Millard Grp., Inc.*, No. CV 13-6926, 2016 WL 6648584, at

---

[4] To be sure, some courts have said that evidence about how long the defect existed for is "not always necessary." *Stais*, 102 A.2d at 206. But such evidence is not necessary only if: "(1) the defect is

\*7 (E.D. Pa. Nov. 10, 2016) ("To survive summary judgment on the issue of constructive notice, the plaintiff must provide evidence sufficient to enable a reasonable jury to find that the hazard existed long enough for the possessor to reasonably discover it."); *Slater v. Genuardi's Fam. Markets*, No. CIV.A. 13-794, 2014 WL 4763336, at \*3 (E.D. Pa. Sept. 24, 2014) (concluding that without evidence about how or when the dangerous condition began, plaintiff "cannot show that Defendants had constructive knowledge of any harmful condition"); *Moultrey*, 422 A.2d at 596, 598 (granting judgment for defendant when plaintiff failed to put on evidence "as to how the offending fruit got onto the floor, or how long it had been there prior to the fall").

But even if that were not enough, Rivera also lacks evidence on other relevant constructive notice factors. When evaluating constructive notice, Pennsylvania courts may also consider "the opportunity that the defendant, as a reasonably prudent person, had to remove [the defect]" and "the need for inspection" in light of the "size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use." *Porter v. Aria Health-Frankford*, No. 1554 EDA 2023, 2024 WL 2768447, at \*5 (Pa. Super. Ct. 2024); *Davanti v. Hummell*, 185 A.2d 554, 556 (Pa. 1962).

Upon consideration of these additional factors, the Court finds that there is still not enough evidence to create a genuine dispute of material fact as to whether CVS had constructive notice that the spray bottle was loose or unscrewed. For one, Rivera has offered no evidence about CVS's opportunity to remedy the loose or unscrewed spray bottle. In fact, the undisputed

---

of a type with an inherently sustained duration, as opposed to a transitory spill which could have occurred an instant before the accident; and (2) a witness saw the defect immediately before or after the accident." *Neve*, 771 A.2d at 791. Here, the loose spray bottle is not the type of hazard with an inherently sustained duration. Rather, it is more like a "spill or piece of fruit on the floor" because the bottle could have become loosened or unscrewed right before the accident. *Id.* Thus, Rivera needed to put on evidence about when the bottle of Vital Oxide became loose or unscrewed.

evidence in the record suggests that detecting this hazard may have required extraordinary care.[5] For another, Rivera has little evidence about the need for inspection based on the size and condition of the premises. Though there is evidence that CVS workers performed only visual inspections of the cardboard boxes (Doc. No. 21-4 at 23), Rivera lacks evidence that a more thorough inspection was needed. There is no evidence, for example, that storing spray bottles in their original box with the flaps cut off makes them more likely to become loose or unscrewed. Nor is there evidence that putting spray bottles under a table makes them more prone to getting loosened or unscrewed. Unfortunately for Rivera, the record is silent as to these considerations, so there is no genuine dispute of fact about these additional constructive notice factors either.

Rivera does not contest the fact that she lacks evidence as to how or when the bottle became unscrewed or loosened. (Doc. No. 25 at 6–7.) Instead, she argues that CVS failed to reasonably monitor the bottles of Vital Oxide and should have discovered that one of the bottles was loose or unscrewed. (Doc. No. 21-2 at 2–9.) In support of her argument, she points to three facts: (1) CVS workers did not inspect the cardboard boxes, besides looking to see if anything was spilling out of them (Doc. No. 21-4 at 23); (2) CVS workers did not hand inspect every bottle of Vital Oxide (Doc. No. 21-2 at 5; Doc. No. 21-4 at 62); and (3) CVS did not have any written policies about inspecting spray bottles (Doc. No. 21-4 at 28). In sum, Rivera argues that CVS and its workers failed to implement and execute an effective monitoring policy to identify loose or unscrewed spray bottles.

---

[5] In her deposition, Rivera said that when she looked at the bottle, it "appeared normal." (Doc. No. 20-4 at 15.) The cap was on, and there was nothing like a pool of liquid to suggest that it was leaking. (*Id.*) Nor was the cardboard box itself wet, suggesting that there was a spill. (*Id.*) Thus, even a visual inspection of the bottle would not have revealed that the bottle was loose or unscrewed. Instead, it appears that only a physical inspection of the bottle would have revealed its dangerous condition.

But Rivera's argument puts the cart before the horse. "The adequacy of any monitoring policy is only relevant *after* it has been established that Defendant had constructive notice of the hazardous condition." *Miller v. Ashford TRS Philly, LLC*, No. 20-CV-5342, 2022 WL 541609, at *5 (E.D. Pa. Feb. 22, 2022) (citing *Cole v. Walmart, Inc.,* No. CV 20-3436, 2021 WL 2695554, at *4 (E.D. Pa. July 1, 2021)). Indeed, "for Defendants to fail to exercise reasonable care with respect to a duty, Defendants must owe a duty in the first place." *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 440 (E.D. Pa. 2011); *see also Hower v. Wal-Mart Stores, Inc.*, No. CIV.A.08-1736, 2009 WL 1688474, at *6 (E.D. Pa. June 16, 2009) ("Defendant's alleged failure to perform a safety sweep says nothing about how long the spill was present."). Thus, Rivera's argument is relevant only *after* she has established that CVS had a hand in creating the hazard or had actual or constructive notice that the spray bottle was unscrewed or loosened. *See Lerro*, 2009 WL 10684916 at *2 (reasoning that "to trigger the duty of care, an invitee must prove either that the landowner had a hand in creating the harmful condition or had actual or constructive knowledge of the condition." (internal quotations omitted)). Because she has not done so, Rivera's argument about the adequacy of CVS's monitoring policies does not create a genuine dispute of material fact as to whether CVS's duty was triggered with respect to correcting the bottle's dangerous condition.[6]

---

[6] In her brief, Rivera cites *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191, 1195 (Pa. Super. Ct. 2015) for the proposition that CVS violated its "duty of reasonable monitoring." (Doc. No. 21-2 at 2.) In *Rodriguez*, the Pennsylvania Superior Court reversed the trial court's grant of summary judgment in a slip-and-fall case. 111 A.3d at 1197. Although the court agreed that Defendants had no actual or constructive notice of the harmful condition, it held that there was an open question of whether Defendants acted affirmatively to inspect the premises. *Id.* at 1196–97. The Court finds that *Rodriguez* is inapt here. The *Rodriguez* court reversed the trial court because there was an "open question about spoliation" since Defendants failed to produce records that their employees had followed a cleaning schedule. *Id.* at 1196. By contrast, here, there are no spoliation issues or any indication that CVS employees failed to comply with a specific inspection policy with respect to the spray bottles. *See McClure v. Love's Travel Stops & Country Stores*, No. 1:21-CV-00334, 2023 WL 3609158, at *8 (M.D. Pa. May 23, 2023) (distinguishing *Rodriguez* on spoliation grounds). Plus, Rivera still has "not produced any evidence regarding the duration of the dangerous condition on [CVS's] premise," so a jury would

***

Rivera suffered a serious injury when she picked up a spray bottle of disinfectant at CVS. But the "mere happening of an accident due to [a loose or unscrewed spray bottle] is neither, in and of itself, evidence of a breach of [CVS's] duty of care to [its] invitees, nor raises a presumption of negligence." *Moultrey*, 422 A.2d 596.  Instead, Rivera needed evidence that CVS had actual or constructive notice that the spray bottle was loose or unscrewed or had a hand in creating this hazard.  Rivera offered no such evidence, and without it, there is no genuine dispute of material fact as to the duty element of her negligence claim.  Thus, CVS is entitled to judgment as a matter of law.

### III.  Conclusion

For the reasons described above, the Court grants CVS's motion for summary judgment. An appropriate order follows.

---

have to guess whether, assuming CVS needed to have an inspection policy with respect to the spray bottles, it would have discovered the loose or unscrewed bottle of Vital Oxide.  *Id.*  Thus, there is no genuine dispute of material fact on this issue either.